when a local government *seeks to enforce* a local ordinance predating the enactment of Chapter 3.

The Majority's interpretation of Chapter 3 also leads to an untenable position. The Majority agrees that a municipality is prohibited only from enforcing an unauthorized ordinance predating Chapter 3. However, the Majority would nonetheless allow the AG to challenge not only this prohibited enforcement *but also the mere existence on the ledgers* of an unauthorized ordinance predating Chapter 3. In other words, the Majority would allow the AG to sue a township that is not engaging in an act prohibited by Chapter 3.

I recognize several policy reasons that support the General Assembly's limited grant of standing to the AG to interfere with local government, including preservation of the Commonwealth's resources and judicial economy. Specifically, it would be a waste of taxpayer money for the AG to prosecute cases merely to strike off local ledgers ordinances that townships do not and never intend to enforce. The General Assembly clearly did not intend to create incentives for the AG to seek out townships with unauthorized local ordinances predating the effective date of Title 3 and sue them. *See* 3 Pa.C.S. § 314(a). The fact that only a limited number of individuals may refer "unauthorized local ordinance" cases to the AG for investigation illustrates this policy choice. Only "[a]n owner or operator of a normal agricultural operation may request the Attorney General to review a local ordinance believed to be an unauthorized local ordinance." 3 Pa.C.S. § 314(a). Finally, a broader interpretation of the AG's powers contravenes this Commonwealth's general policy of limited interference with the legislative actions of local government.[1] *See Mazur v. Trinity Area School Dist.*, 961 A.2d 96, 105 (Pa.2008).

For these reasons, I respectfully dissent.

Chief Justice CASTILLE joins in this opinion.

**Damon GREY, Appellant**

v.

**COMMONWEALTH of Pennsylvania, Department of Corrections, Appellee.**

Supreme Court of Pennsylvania.

May 1, 2009.

1. Respectfully, this Court's decision in *Arsenal Coal* is inapposite. Under *Arsenal Coal*, a Locust Township farmer would be able to challenge Locust Township's unauthorized local ordinance and obtain an injunction. *Arsenal Coal*, 477 A.2d at 1339; 3 Pa.C.S. § 315(b). According to that decision, even an ordinance that is not enforced may present an *immediate* harm to a party that is *directly* injured. *Arsenal Coal*, 477 A.2d at 1339. Here, however, we have a different procedural posture. Here, the AG does not claim that he is facing a direct or immediate harm. Thus, unlike in *Arsenal Coal*, the question before us does not require the Court to interpret what constitutes "immediate" harm under general standing principles. Instead, the question before us is simply whether the General Assembly, in creating standing for the AG by legislative fiat, intended the AG to be able to challenge unauthorized local ordinances predating Chapter 3 that the adopting municipality does not seek to enforce. For this reason, any reliance on this Court's previous decisions regarding common law standing principles is misplaced. Here, we address standing derived solely from a Pennsylvania statute.

## *ORDER*

PER CURIAM.

**AND NOW,** this 1st day of May, 2009, the Order of the Commonwealth Court is hereby **AFFIRMED.**